# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| SIERRA N. GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. **3:21-cv-00359** |
| | ) |
| EQUIFAX INFORMATION SERVICES, LLC, | ) |
| SERVE: Corporation Service Company, Reg. Agent | ) |
| 100 Shockoe Slip | ) |
| 2nd Floor | ) |
| Richmond, VA  23219 | ) |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| SERVE: David N. Anthony, Reg. Agent | ) |
| TROUTMAN SANDERS, LLP | ) |
| 1001 Haxall Point | ) |
| Richmond, VA 23219 | ) |
| | ) |
| TRANS UNION, LLC, | ) |
| SERVE: Corporation Service Company, Reg. Agent | ) |
| 100 Shockoe Slip | ) |
| 2nd Floor | ) |
| Richmond, VA 23219 | ) |
| | ) |
| and | ) |
| | ) |
| VIRGINIA CREDIT UNION, INC., | ) |
| SERVE: Christopher M. Shockley, Reg. Agent | ) |
| 7500 Boulders View Drive | ) |
| P.O. Box 90010 | ) |
| Richmond, VA 23225 | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **COMPLAINT**

COMES NOW the Plaintiff, SIERRA N. GREEN, by counsel, and for her complaint against each of the Defendants, alleges as follows:

## I.

### PRELIMINARY STATEMENT

1.      Defendants EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and VIRGINIA CREDIT UNION, INC. have violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") by improperly reporting multiple trade lines on Plaintiff's credit file regarding a single unsecured debt that was discharged in Plaintiff's bankruptcy case, and creating the misleading impression that there are more derogatory credit accounts on Plaintiff's credit than are actually attributable to Plaintiff. Despite receiving multiple disputes and correspondence from Plaintiff, Defendants continue to report this inaccurate and derogatory information on Plaintiff's credit.

2.      Defendants EQUIFAX INFORMATION SERVICES and VIRGINIA CREDIT UNION, INC. have violated the FCRA by improperly reporting derogatory information regarding Plaintiff's auto loan, indicating it was included or discharged in bankruptcy even though the loan was paid in full and closed prior to Plaintiff's bankruptcy case, and Plaintiff's credit card, indicating it was included in the wrong bankruptcy chapter and reporting inaccurate post-bankruptcy collection statuses. Despite receiving multiple disputes and correspondence from Plaintiff, Defendants EQUIFAX INFORMATION SERVICES and VIRGINIA CREDIT UNION, INC. continue to report this inaccurate and derogatory information on Plaintiff's credit.

3.      Defendant EQUIFAX INFORMATION SERVICES has violated the FCRA by improperly reporting derogatory information regarding Plaintiff's credit card account with Discover Bank, indicating the account was affected merely by a bankruptcy petition instead of properly reflecting in that trade line the account was discharged in bankruptcy. Despite receiving

multiple disputes and correspondence from Plaintiff, Defendant EQUIFAX INFORMATION SERVICES continue to report this inaccurate and derogatory information on Plaintiff's credit.

4.      Defendant VIRGINIA CREDIT UNION, INC. has also violated the FCRA by requesting and obtaining copies of Plaintiff's credit file on multiple occasions without a permissible purpose.

5.      Defendants' violations include: obtaining Plaintiff's credit file without a permissible purpose, failing to properly investigate Plaintiff's disputes, and failing to maintain reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's credit files. Through these failures, and by improperly reporting on Plaintiff's credit, Defendants have violated, and are continuing to violate, Plaintiff's rights under the FCRA. Accordingly, Plaintiff seeks actual damages, attorney's fees and costs, and punitive damages for Defendants' willful violations of the FCRA.

## II.

### JURISDICTION AND VENUE

6.      The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(1)-(2).

## III.

### PARTIES

8.      Plaintiff SIERRA N. GREEN ("Ms. Green" or "Plaintiff") is a natural person and "consumer" as defined by § 1681a(c) of the FCRA. Ms. Green resides in the County of Henrico, Virginia, which falls within the Richmond Division of the Eastern District of Virginia.

9.      Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a limited liability company formed in Georgia and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

10.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

11.     Equifax disburses consumer reports to third parties, under contract, for monetary compensation.

12.     Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is a corporation formed in Ohio and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

13.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

14.     Experian disburses consumer reports to third parties, under contract, for monetary compensation.

15.     Defendant TRANS UNION, LLC ("Trans Union") is a limited liability company formed in Delaware and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

16.     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and

disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

17.     Trans Union disburses consumer reports to third parties, under contract, for monetary compensation.

18.     Defendant VIRGINIA CREDIT UNION, INC. ("VACU") is a corporation formed in the Commonwealth of Virginia and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia. VACU conducts business in the Commonwealth of Virginia, with consumers in Virginia.

19.     With respect to the accounts it reported on Plaintiff's credit, VACU is a "furnisher" as governed by the FCRA.

**IV.**

**FACTS**

A.     **Background**

20.     On or about July 28, 2014, Plaintiff opened a revolving credit card account with VACU (the "VACU Credit Card").

21.     On or about August 7, 2014, Plaintiff opened a revolving line of credit account with VACU (the "VACU Line of Credit").

22.     On or about August 8, 2014, Plaintiff entered into a loan agreement with VACU to finance the purchase of a vehicle (the "VACU 1st Auto Loan").

23.     On or about September 17, 2015, Plaintiff opened an unsecured installment loan account with VACU (the "VACU Unsecured Loan").

24.     On or about December 5, 2017, Plaintiff paid off and closed the VACU 1st Auto Loan.

25.     On or about January 2, 2018, Plaintiff entered into a loan agreement with VACU to finance the purchase of a 2010 Nissan Altima (the "VACU 2nd Auto Loan").

26.     On December 28, 2018, Plaintiff filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the Eastern District of Virginia, Richmond Division, Case No. 18-36475-KLP. Relief was ordered.

27.     At the time of her bankruptcy filing, Plaintiff owed four debts to VACU: the VACU Credit Card, the VACU Line of Credit, the VACU Unsecured Loan, and the VACU 2nd Auto Loan. Because Plaintiff paid off and closed the VACU 1st Auto Loan in December 2017, no amounts were owed on that loan at the time of her bankruptcy filing and that account was closed.

28.     Amongst the debts included in her bankruptcy schedules filed with the bankruptcy court on December 28, 2018, Plaintiff listed the VACU 2nd Auto Loan in "Schedule D–Creditors Holding Secured Claims" and the VACU Credit Card, VACU Line of Credit, and VACU Unsecured Loan in "Schedule F–Creditors Holding Unsecured Nonpriority Claims." Plaintiff did not list any other debts owed to VACU in her bankruptcy schedules.

29.     On April 10, 2019, the bankruptcy court entered a Discharge of Debtor in Plaintiff's bankruptcy case, pursuant to 11 U.S.C. § 727 of the Bankruptcy Code (the "Discharge").

30.     On April 12, 2019, the Bankruptcy Noticing Center sent a copy of the Discharge to VACU via electronic transmission.

31.     The VACU Credit Card, the VACU Line of Credit, the VACU Unsecured Loan, and the VACU 2nd Auto Loan (collectively, the "Four Discharged VACU Accounts") were each included in Plaintiff's Discharge. Other than those Four Discharged VACU Accounts, no other

VACU accounts were discharged in Plaintiff's bankruptcy case, nor did Plaintiff have any other open accounts with VACU.

32.     After receiving her Discharge, Plaintiff hoped and believed her credit problems were behind her and that, based on her faithful completion of all of her obligations to obtain her Discharge, she would be allowed to receive a fresh start from her indebtedness and rebuild her credit.

33.     Shortly after completing her bankruptcy case, Plaintiff submitted credit applications to certain lenders in an effort to begin improving her credit profile.

34.     On or about May 7, 2019, Plaintiff applied for credit with CitiCards/CitiBank. Plaintiff's application was denied. Upon information and belief, CitiCards/CitiBank relied upon information contained in a consumer report provided by Experian in making its decision to deny the extension of credit to Plaintiff.

35.     Also on or about May 7, 2019, Plaintiff applied for credit with First Choice/Green Dot Bank. Upon information and belief, in connection with Plaintiff's credit application, Equifax and Experian furnished to First Choice/Green Dot Bank a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

36.     Also on or about May 7, 2019, Plaintiff applied for credit with Curo Management LLC d/b/a Speedy Cash. Upon information and belief, in connection with Plaintiff's credit application, Equifax furnished to Curo Management LLC d/b/a Speedy Cash a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

37.     On or about May 10, 2019, Plaintiff applied for credit with CBNA. Plaintiff's application was denied. Upon information and belief, CBNA relied upon information contained

in a consumer report provided by Equifax in making its decision to deny the extension of credit to Plaintiff.

38.     On or about August 5, 2019, Plaintiff applied for credit with OneMain Financial. Upon information and belief, in connection with Plaintiff's credit application, Trans Union furnished to OneMain Financial a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

39.     On or about August 20, 2019, Plaintiff applied for credit with JPMCB Card Services. Plaintiff's application was denied. Upon information and belief, JPMCB Card Services relied upon information contained in consumer reports provided by Equifax and Experian in making its decision to deny the extension of credit to Plaintiff.

40.     On or about August 21, 2019, Plaintiff applied for credit with Barclays Bank Delaware. Plaintiff's application was denied. Upon information and belief, Barclays Bank Delaware relied upon information contained in a consumer report provided by Trans Union in making its decision to deny the extension of credit to Plaintiff.

41.     In or around November 2019, Plaintiff requested copies of her credit disclosures from Equifax, Experian and Trans Union. Plaintiff subsequently received a credit disclosure from Equifax dated November 26, 2019, a credit disclosure from Experian dated November 25, 2019, and a credit disclosure from Trans Union dated December 2, 2019 (collectively, the "2019 Disclosures").

**B.     Inaccurate and Derogatory Reporting by Equifax.**

42.     The 2019 Disclosures revealed that Equifax was reporting inaccurate and derogatory information regarding several items on Plaintiff's credit.

43.     First, with respect to the VACU Credit Card, Equifax reported an account status of "Included in Wage Earner Plan", the account history section showed the account was in collection from December 2018 through February 2019 (after the bankruptcy filing date), and comments in the Additional Information section indicated the account was affected merely by a "Bankruptcy Petition" instead of "Bankruptcy Discharged".

44.     Equifax's reporting with respect to the VACU Credit Card was inaccurate because that account was discharged in Plaintiff's *chapter 7* bankruptcy case, not a *chapter 13* case. Therefore, Equifax should not have reported any information suggesting that the account was included in a "wage earner plan," chapter 13 plan, or chapter 13 bankruptcy. Furthermore, reporting that the account was affected merely by a "bankruptcy petition" instead of "bankruptcy discharged" was inaccurate and misleading because it suggests that the account may not have been discharged in Plaintiff's bankruptcy, especially when the reporting is compared to the reporting of certain other discharged accounts on Plaintiff's credit report, which accurately reflected comments of "bankruptcy discharged". Finally, because this account was discharged in Plaintiff's bankruptcy case, Equifax should not have continued to report it in collection in the months after Plaintiff filed her bankruptcy case.

45.     Second, Equifax was inaccurately reporting derogatory information in a trade line that referred to a VACU unsecured loan account (partial account no. 51996090 and opened on July 28, 2014), which was not one of Plaintiff's Four Discharged VACU Accounts (the "Additional VACU Account"). Specifically, Equifax was reporting the Additional VACU Account with an account status of "Account Included in Bankruptcy" and a date of first delinquency of February 2019. Including the Additional VACU Account, Equifax was

inaccurately reporting that Plaintiff had five separate VACU accounts discharged in her bankruptcy case.

46.     Equifax's reporting with respect to the Additional VACU Account was inaccurate because Plaintiff only had four accounts with VACU at the time of her bankruptcy filing, and she did not open any accounts with VACU thereafter, so it was not possible for a fifth VACU account to have been discharged in Plaintiff's bankruptcy. Even if the Additional VACU Account trade line referred to or was a duplicate of one of Plaintiff's Four Discharged VACU Accounts, it was misleading and inaccurate to report differing and derogatory information about that account under two separate trade lines. Furthermore, if the Additional VACU Account was included in bankruptcy, Equifax should not have been reporting a date of first delinquency that fell on a date after the bankruptcy was filed.

47.     Third, Equifax was also inaccurately reporting derogatory information regarding an account with Discover Bank (partial account no. 601100052432), including comments in the additional information section indicating the account was affected merely by a "Bankruptcy Petition" instead of "Bankruptcy Discharged".

48.     Equifax's reporting regarding the Discover Bank account, which was discharged in Plaintiff's bankruptcy case, was inaccurate and misleading because it suggests that the account may not have been discharged in Plaintiff's bankruptcy, especially when the reporting is compared to the reporting of certain other discharged accounts on Plaintiff's credit report, which accurately reflected the bankruptcy status as "bankruptcy discharged".

49.     Fourth, Equifax was reporting inaccurate and derogatory information about Plaintiff's Comenity/Ashley Stewart account (partial account no. 200780) and Comenity/Victoria's Secret account (partial account no. 585637532873) (collectively, the

10

"Comenity Accounts"). Specifically, Equifax was reporting both of the Comenity Accounts with a status of "Account Included in Bankruptcy", a date major delinquency first reported of December 2018, and comments in the additional information section referencing "Bankruptcy Chapter 7" and "Bankruptcy Discharged". Equifax also reported the Comenity/Ashley Stewart account with a date of first delinquency of December 2018, and the Comenity/Victoria's Secret account with a date of first delinquency of July 2018.

50.     Equifax's reporting was inaccurate because Plaintiff paid both of the Comenity Accounts in full prior to filing bankruptcy, and therefore, neither of those account were delinquent, nor were they included in or otherwise affected by Plaintiff's bankruptcy.

51.     Finally, the 2019 Disclosures revealed that, on June 11, 2019, VACU requested and Equifax furnished to VACU a consumer report concerning Plaintiff, without Plaintiff's permission or any other permissible purpose (the "First Impermissible Credit Pull"). According to the 2019 Equifax Disclosure, the purpose of VACU's June 11, 2019 inquiry was to conduct "a periodic review of [Plaintiff's] credit history by one of [Plaintiff's] creditors." However, because all of Plaintiff's accounts with VACU either were paid in full before bankruptcy (as in the case of the VACU 1st Auto Loan) or were discharged in her bankruptcy case in April 2019, VACU was no longer one of Plaintiff's creditors at the time the First Impermissible Credit Pull was conducted, and therefore, VACU was not entitled to receive a consumer report concerning Plaintiff.

52.     On January 21, 2020, Plaintiff sent Equifax a letter dated January 21, 2020 via certified mail, to dispute the inaccurate and derogatory information set forth in the 2019 Credit Disclosure (the "First Equifax Dispute Letter").

53.     In the First Equifax Dispute Letter, with respect to the Additional VACU Account, Plaintiff disputed the date of first delinquency being reported as occurring on a date after she filed her bankruptcy. At that time, Plaintiff was under the mistaken impression that the Additional VACU Account trade line actually related to one of her Four Discharged VACU Accounts. Thus, Plaintiff did not assert in the First Equifax Dispute Letter that the Additional VACU Account was not one of her Four Discharged VACU Accounts.

54.     In the First Equifax Dispute Letter, Plaintiff also disputed the inaccurate and derogatory information being reported about the VACU Credit Card. Specifically, Plaintiff asserted that the VACU Credit Card was included in and discharged in her chapter 7 bankruptcy, and therefore, that any post-petition delinquencies and any references to a chapter 13 bankruptcy should be removed from her credit report. Further, Plaintiff stated that the comments indicating the account was merely affected by a "bankruptcy petition" should be corrected to make clear that the account was discharged.

55.     In the First Equifax Dispute Letter, Plaintiff also disputed Equifax's reporting of the Comenity Accounts, the Discover Bank account, and an account with Bank of America (partial account no. 440066426892). With respect to the Comenity Accounts, Plaintiff advised Equifax that she paid both of those accounts in full prior to her bankruptcy filing, and therefore, those accounts were not included in, discharged in, or otherwise affected by her bankruptcy. With respect to the Discover Bank account, Plaintiff asserted that the comments Equifax was reporting indicating the account was merely affected by a "bankruptcy petition" were misleading and inaccurate and should be corrected to make clear that the account was discharged. Finally, with respect to an account that Plaintiff previously had with Bank of America, Plaintiff disputed

Equifax's reporting of a date of first delinquency occurring after the date that the account was closed.

56.     On January 25, 2020, Equifax received Plaintiff's First Equifax Dispute Letter.

57.     In response to the First Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated February 11, 2020.

58.     In its February 11, 2020 reinvestigation results, Equifax indicated that it deleted both of the Comenity Accounts from Plaintiff's credit file, but Equifax failed to address or resolve any of the inaccurate information that Plaintiff disputed with respect to the Additional VACU Account, the VACU Credit Card, the Discover Bank account, or the Bank of America account. Specifically, with respect to the VACU Credit Card, Equifax updated only some of the pre-bankruptcy delinquent payment statuses being reported in the Account History section of the trade line, but Equifax continued to inaccurately report: the account as being in "Bankruptcy Chapter 13", comments indicating the account was affected merely by a "bankruptcy petition" instead of "bankruptcy discharged", and an account history showing the status of the account as charged off during several months after Plaintiff filed bankruptcy. With respect to the Additional VACU Account, and the Discover Bank and Bank of America accounts, Equifax failed to delete or correct any of the information that Plaintiff disputed in the First Equifax Dispute Letter, and instead chose to continue to report the same inaccurate and derogatory information in the trade lines relating to those accounts.

59.     On April 3, 2020, Plaintiff sent Equifax a second letter, dated April 3, 2020, via certified mail to dispute the inaccurate and derogatory information appearing on her credit (the "Second Equifax Dispute Letter").

60.     In the Second Equifax Dispute Letter, Plaintiff disputed with Equifax the same inaccurate and derogatory information that she disputed in the First Equifax Dispute Letter with respect to the Additional VACU Account, the VACU Credit Card, the Discover Bank account, and the Bank of America account. With respect to the Additional VACU Account, Plaintiff again only disputed the date of first delinquency being reported as occurring on a date after she filed bankruptcy, but she did not assert that the Additional VACU Account was not one of her Four Discharged VACU Accounts because she was still under the mistaken impression that the Additional VACU Account trade line actually related to one of her Four Discharged VACU Accounts.

61.     Plaintiff enclosed with the Second Equifax Dispute Letter copies of the notice of her bankruptcy filing, the Discharge, and her relevant bankruptcy schedules to demonstrate the timing of her bankruptcy filing, the entry of the Discharge, and the identity of the creditors and accounts that were discharged in her bankruptcy. Plaintiff requested again that Equifax correct the information it was reporting about the disputed accounts.

62.     On April 8, 2020, Equifax received Plaintiff's Second Equifax Dispute Letter.

63.     In response to the Second Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated April 25, 2020.

64.     In its April 25, 2020 reinvestigation results, Equifax revealed that it failed to address or resolve any of the inaccurate information that Plaintiff disputed in the Second Equifax Dispute Letter. Specifically, with respect to the Additional VACU Account, Equifax continued to inaccurately report that the date of first delinquency occurred after Plaintiff filed her bankruptcy case. With respect to the VACU Credit Card, Equifax was still inaccurately reporting references to a chapter 13 bankruptcy, comments indicating the account was affected merely by a

"bankruptcy petition" instead of "bankruptcy discharged", and an account history showing the status of the account as charged off during several months after Plaintiff filed bankruptcy. With respect to the Discover Bank account, Equifax continued to inaccurately report comments indicating the account was affected merely by a "bankruptcy petition" instead of "bankruptcy discharged". Finally, with respect to the Bank of America account, Equifax continued to report that the date of first delinquency occurred after the date that the account was closed.

65.     In its April 25, 2020 reinvestigation results, Equifax also advised Plaintiff that it updated information on Plaintiff's credit report regarding thirteen (13) other credit accounts, none of which had Plaintiff disputed in either her First or Second Equifax Dispute Letter. Among the trade lines that Equifax updated were eleven (11) educational loan accounts that were not included in or otherwise affected by Plaintiff's bankruptcy and two (2) accounts that were each closed *prior* to Plaintiff's bankruptcy filing, including one credit account with Syncb/Old Navy (partial account no. 601859639605) and the VACU 1st Auto Loan. The trade lines for the Syncb/Old Navy account and the VACU 1st Auto Loan each reflected a "date closed" that pre-dated Plaintiff's bankruptcy filing, and the trade lines for each of Plaintiff's educational loans each reflected the type of loan as "Education Loan". Nevertheless, Equifax advised Plaintiff in the April 25, 2020 reinvestigation results that the status of each of the accounts was updated to reflect a status of "included in bankruptcy/included in bankruptcy of another person." Equifax's updates to each of those accounts were incorrect because they were either credit accounts closed prior to Plaintiff's bankruptcy filing or educational loans excepted from Plaintiff's bankruptcy discharge. As such, none of those accounts were included in or otherwise impacted by Plaintiff's bankruptcy case.

66.     In or around July 2020, Plaintiff obtained an updated copy of her Equifax credit disclosure, dated July 28, 2020, which revealed that, despite what Equifax reported in its April 25, 2020 reinvestigation results, Equifax was not reporting Plaintiff's eleven (11) educational loan accounts or the Syncb/Old Navy account as included in a bankruptcy. However, Equifax was inaccurately reporting the VACU 1st Auto Loan with a status of "Account Included in Bankruptcy", a date of first delinquency and date major delinquency first reported of December 2018, and comments in the Additional Information section referencing "Bankruptcy Chapter 7" and "Bankruptcy Discharged". This derogatory information that Equifax was reporting regarding the VACU 1st Auto Loan was inaccurate because, as Equifax reported in the 2019 Equifax Disclosure, the VACU 1st Auto Loan was paid in full and closed in December 2017, prior to the filing of Plaintiff's bankruptcy case, and therefore, it was not included in or otherwise affected by Plaintiff's bankruptcy case.

67.     The July 28, 2020 Equifax disclosure also revealed that, despite Plaintiff's prior disputes, Equifax continued to report the inaccurate and derogatory information that Plaintiff previously disputed regarding the Additional VACU Account, the VACU Credit Card, the Discover Bank account, and the Bank of America account.

68.     Finally, the July 28, 2020 Equifax disclosure revealed that on March 3, 2020, VACU requested and Equifax furnished to VACU a consumer report concerning Plaintiff without Plaintiff's permission or any other permissible purpose (the "Second Impermissible Credit Pull"). According to the July 28, 2020 Equifax disclosure, the purpose of VACU's March 3, 2020 inquiry was to conduct "a periodic review of [Plaintiff's] credit history by one of [Plaintiff's] creditors." However, because all of Plaintiff's accounts with VACU were either paid in full and closed before she filed bankruptcy (as in the case of the VACU 1st Auto Loan) or

discharged in her bankruptcy case in April 2019, VACU was no longer one of Plaintiff's creditors at the time the Second Impermissible Credit Pull was conducted, and therefore, VACU was not entitled to receive a consumer report concerning Plaintiff.

69.     On August 29, 2020, Plaintiff sent Equifax a third letter, dated August 28, 2020, via certified mail, to dispute the inaccurate and derogatory information appearing on her credit (the "Third Equifax Dispute Letter").

70.     In the Third Equifax Dispute Letter, Plaintiff disputed the inaccurate and derogatory information that Equifax was reporting regarding the VACU 1st Auto Loan, the VACU Credit Card, and the Additional VACU Account. Specifically, Plaintiff asserted that the VACU 1st Auto Loan was paid and closed prior to her bankruptcy filing, as Equifax had previously reported, and therefore, Equifax should not report it as being included in or affected by her bankruptcy. With respect to the VACU Credit Card, because that debt was included in her chapter 7 bankruptcy discharge, Plaintiff again disputed Equifax's reporting the account with a status referring to a chapter 13 bankruptcy, the account history indicating charge-off after Plaintiff's bankruptcy filing, and comments indicating the account was affected merely by a "bankruptcy petition" instead of "bankruptcy discharged". Finally, because Plaintiff only had four accounts with VACU that were discharged in her bankruptcy case, she asserted that the Additional VACU Account trade line either referenced an account that did not belong to her or was a duplicate derogatory reporting of another VACU account already being reported with derogatory information elsewhere on her credit, even suggesting that the Additional VACU Account was duplicate reporting of the VACU Credit Card. Therefore, Plaintiff requested that Equifax correct or delete the derogatory information it was reporting in the Additional VACU Account trade line.

71.     Plaintiff enclosed with the Third Equifax Dispute Letter copies of the notice of her bankruptcy filing, the Discharge, and her relevant bankruptcy schedules to demonstrate again the timing of her bankruptcy filing and Discharge, and to identify the creditors and accounts that were discharged in her bankruptcy. Plaintiff requested again that Equifax correct the information it was reporting about the disputed accounts.

72.     On September 12, 2020, Equifax received Plaintiff's Third Equifax Dispute Letter.

73.     In response to the Third Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated September 18, 2020.

74.     In its September 18, 2020 reinvestigation results, Equifax failed to address or resolve any of the inaccurate information that Plaintiff disputed with respect to the VACU 1st Auto Loan, the VACU Credit Card, or the Additional VACU Account. The only information Equifax provided regarding its research into Plaintiff's disputes was that it determined all three accounts were "reporting included in bankruptcy", and Equifax did not update any of the information it was reporting regarding any of the disputed accounts. Instead, Equifax continued to inaccurately report the VACU 1st Auto Loan and the Additional VACU Account—along with Plaintiff's Four Discharged VACU Accounts—with a status of included in bankruptcy, including reporting the VACU Credit Card with a status referring to a chapter 13 bankruptcy, post-petition collection statuses, and comments indicating the account was affected merely by a "bankruptcy petition" instead of "bankruptcy discharged".

75.     On December 22, 2020, Plaintiff sent Equifax a fourth letter, dated December 21, 2020, via certified mail, to dispute the inaccurate and derogatory information appearing on her credit (the "Fourth Equifax Dispute Letter").

76.     In the Fourth Equifax Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information that Equifax was reporting regarding the VACU 1st Auto Loan, the VACU Credit Card, and the Additional VACU Account. Specifically, Plaintiff asserted again that the VACU 1st Auto Loan was paid and closed prior to her bankruptcy filing, as Equifax had previously reported, and therefore, that it should not be reported as being included in or affected by her bankruptcy. With respect to the VACU Credit Card, Plaintiff again disputed Equifax's report a status referring to a chapter 13 bankruptcy, the post-petition collection statuses, and the comments indicating the account was affected merely by a "bankruptcy petition" instead of "bankruptcy discharged". Finally, Plaintiff asserted again that the Additional VACU Account trade line was either an account that did not belong to her or was a duplicate derogatory reporting of another VACU account already being reported with derogatory information elsewhere on her credit. Again, Plaintiff suggested to Equifax that the Additional VACU Account was duplicate reporting of the VACU Credit Card. Therefore, Plaintiff requested again that Equifax correct or delete the derogatory information it was reporting regarding the Additional VACU Account trade line.

77.     Plaintiff enclosed with the Fourth Equifax Dispute Letter copies of the notice of her bankruptcy filing, the Discharge, and her relevant bankruptcy schedules to demonstrate again the timing of her bankruptcy filing and Discharge, as well as to identify the creditors and accounts that were discharged in her bankruptcy. Plaintiff requested again that Equifax correct the information it was reporting about the disputed accounts.

78.     On January 6, 2021, Equifax received Plaintiff's Fourth Equifax Dispute Letter.

79.     In response to the Fourth Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated January 23, 2021.

80.     In its January 23, 2021 reinvestigation results, Equifax failed again to address or resolve the inaccurate information that Plaintiff disputed in her Fourth Equifax Dispute Letter. With respect to the VACU 1st Auto Loan, the results of Equifax's research were merely that the "account is currently reporting included in bankruptcy", and Equifax continued to inaccurately report references to the account being included in or affected by Plaintiff's bankruptcy. With respect to the VACU Credit Card, Equifax removed the comment referencing "Bankruptcy Petition," but continued inaccurately reporting that the account was included in a "wage earner plan" as well reporting in the account history that the account was charged off for several months after Plaintiff filed bankruptcy. Finally, with respect to the Additional VACU Account, Equifax inexplicably updated the date major delinquency first reported from December 2018 to January 2021, but failed to otherwise update or delete the disputed derogatory reporting regarding the Additional VACU Account, which, when combined with the reporting of the Four Discharged VACU Accounts elsewhere on Plaintiff's Credit, continued to make it appear as though Plaintiff had five VACU accounts discharged in her bankruptcy case.

81.     In its January 23, 2021 reinvestigation results, Equifax also advised Plaintiff that it updated information in several trade lines on Plaintiff's credit report that were not disputed in any of Plaintiff's four dispute letters to Equifax. Among the trade lines that Equifax updated were Plaintiff's bankruptcy case and six (6) credit accounts, including a Syncb/Old Navy account, a Capital One Bank USA, NA account, a TD Bank USA/Target Credit account, the VACU Unsecured Loan, the VACU Line of Credit, and the VACU 2nd Auto Loan. Even though Plaintiff did not dispute any information being reported about any of those credit accounts or her bankruptcy case, Equifax updated each of those trade lines with a comment of "Consumer

Disputes – Reinvestigation in Process". Equifax's updates to each of those trade lines were incorrect because Plaintiff did not dispute information regarding any of those trade lines.

82.     Equifax received all four dispute letters from Plaintiff, but in each case, Equifax wholly and entirely failed to conduct the reinvestigations required by law. Instead, Equifax merely "parroted" the inaccurate information dictated to it by VACU, Discover Bank, and Bank of America.

83.     Equifax had knowledge that it was reporting inaccurate information about several of Plaintiff's accounts, but deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

84.     Upon information and belief, Equifax published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the accounts disputed by Plaintiff.

**C.      Inaccurate and Derogatory Reporting by Trans Union.**

85.     The 2019 Disclosures revealed that Trans Union was also inaccurately reporting derogatory information in a trade line that referred to the Additional VACU Account. Specifically, even though the Additional VACU Account was not one of Plaintiff's Four Discharged VACU Accounts, Trans Union was reporting in the Additional VACU Account trade line a pay status of "Account Included in Bankruptcy" and remarks of "Chapter 7 Bankruptcy". Including the Additional VACU Account, Trans Union was inaccurately reporting that Plaintiff had five separate VACU accounts discharged in her bankruptcy case.

86.     Trans Union's reporting with respect to the Additional VACU Account was inaccurate because Plaintiff only had four accounts with VACU at the time of her bankruptcy filing, and she did not open any accounts with VACU thereafter, so it was not possible for a fifth

VACU account to have been discharged in Plaintiff's bankruptcy. Even if the Additional VACU Account trade line referred to or was a duplicate of one of Plaintiff's Four Discharged VACU Accounts, it was misleading and inaccurate to report differing and derogatory information about that account under two separate trade lines.

87. The 2019 Disclosures also revealed that Trans Union was reporting inaccurate and derogatory information about Plaintiff's Comenity Accounts. In the trade lines for both of those accounts, Trans Union reported remarks referencing "Chapter 7 Bankruptcy" even though its own reporting showed the respective account closed dates pre-dated Plaintiff's bankruptcy filing date.

88. Trans Union's reporting was inaccurate because Plaintiff paid both of the Comenity Accounts in full prior to filing bankruptcy, and therefore, neither of those accounts were delinquent, nor were they included in or otherwise affected by Plaintiff's bankruptcy.

89. On January 21, 2020, Plaintiff sent Trans Union a letter, dated January 21, 2020, via certified mail, to dispute the inaccurate and derogatory information set forth in the 2019 Disclosure (the "First Trans Union Dispute Letter").

90. In the First Trans Union Dispute Letter, with respect to the Comenity Accounts, Plaintiff disputed Trans Union's inaccurate reporting of remarks that referenced a bankruptcy filing. Plaintiff advised Trans Union that she paid both of those accounts in full and closed them prior to her bankruptcy filing, as was evident from the respective account closed dates Trans Union itself was reporting, and that those accounts were not included, discharged, or otherwise affected by Plaintiff's bankruptcy.

91. At that time, Plaintiff was under the mistaken impression that the Additional VACU Account trade line actually related to one of her Four Discharged VACU Accounts. Thus,

Plaintiff did not assert in the First Trans Union Dispute Letter that the Additional VACU Account was not one of her Four Discharged VACU Accounts. It was not until after Plaintiff sent the First Trans Union Dispute Letter that she realized the Additional VACU Account was either a duplicate reporting of one of her Four Discharged VACU Accounts or it referred to a VACU account that did not belong to Plaintiff.

92.     On January 24, 2020, Trans Union received Plaintiff's First Trans Union Dispute Letter.

93.     In response to the First Trans Union Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated February 18, 2020.

94.     In its February 18, 2020 reinvestigation results, Trans Union indicated that it deleted both of the disputed Comenity Accounts from Plaintiff's credit file

95.     On August 29, 2020, Plaintiff sent Trans Union a second letter, dated August 28, 2020, via certified mail, to dispute the remaining inaccurate and derogatory information appearing on her credit (the "Second Trans Union Dispute Letter").

96.     In the Second Trans Union Dispute Letter, Plaintiff disputed the inaccurate and derogatory information Trans Union was reporting in the Additional VACU Account trade line. Specifically, Plaintiff asserted that, because she only had four accounts with VACU that were discharged in her bankruptcy case, the Additional VACU Account trade line either referenced an account that did not belong to her or was a duplicate trade line of another VACU account already being reported elsewhere on her credit, even suggesting that the Additional VACU Account was duplicate reporting of the VACU Credit Card. Therefore, Plaintiff requested that Trans Unions correct or delete the derogatory information being reported in the Additional VACU Account trade line.

97.     On September 3, 2020, Trans Union received Plaintiff's Second Trans Union Dispute Letter.

98.     In response to the Second Trans Union Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated September 13, 2020.

99.     In its September 13, 2020 reinvestigation results, Trans Union failed to resolve the inaccurate information that Plaintiff disputed with respect to the Additional VACU Account. Trans Union did not even reference the disputed Additional VACU Account in its reinvestigation results. Instead, the only account Trans Union addressed in its reinvestigation results was Plaintiff's VACU Credit Card, which was not an account that Plaintiff disputed in her Second Trans Union Dispute Letter. Nevertheless, Trans Union advised Plaintiff that it "verified as accurate" the information being reported about the VACU Credit Card.

100.    On December 22, 2020, Plaintiff sent Trans Union a third letter, dated December 21, 2020, via certified mail, to dispute the inaccurate and derogatory information Trans Union was reporting on her credit (the "Third Trans Union Dispute Letter").

101.    In the Third Trans Union Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information Trans Union was reporting in the Additional VACU Account trade line. Plaintiff asserted again that the Additional VACU Account trade line, which reported a fifth VACU account discharged in Plaintiff's bankruptcy, either referenced an account that did not belong to her or it was a duplicate trade line of another VACU account already being reported elsewhere on her credit, suggesting again that the Additional VACU Account was a duplicate reporting of the VACU Credit Card.

102.    Plaintiff enclosed with the Third Trans Union Dispute Letter copies of the notice of her bankruptcy filing, the Discharge, and her relevant bankruptcy schedules to demonstrate

the timing of her bankruptcy filing and Discharge, as well as to identify the creditors and accounts that were discharged in her bankruptcy. Plaintiff requested again that Trans Union correct or delete the information it was reporting about the disputed Additional VACU Account.

103.    On December 30, 2020, Trans Union received Plaintiff's Third Trans Union Dispute Letter.

104.    In response to the Third Trans Union Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated January 10, 2021.

105.    In its January 10, 2021 reinvestigation results, Trans Union failed again to resolve the inaccurate information that Plaintiff disputed with respect to the Additional VACU Account. Despite updating the estimated month and year that the trade line would be removed from Plaintiff's credit, Trans Union was still inaccurately reporting the Additional VACU Account with a pay status of "Account Included in Bankruptcy" and remarks of "Chapter 7 Bankruptcy". When combined with the reporting of the Four Discharged VACU Accounts elsewhere on Plaintiff's Credit, this reporting continued to make it appear as though Plaintiff had five VACU accounts discharged in her bankruptcy case.

106.    In or around April 2021, Plaintiff obtained an updated copy of her Trans Union credit disclosure, dated April 29, 2021, which revealed that, despite Plaintiff's prior disputes, Trans Union was continuing to report the same inaccurate and derogatory information that Plaintiff previously disputed regarding the Additional VACU Account trade line.

107.    The April 29, 2021 Trans Union disclosure also revealed that Trans Union began reporting inaccurate and derogatory information about several of Plaintiff's other credit accounts that were previously being reported accurately. Specifically, with respect to eleven (11) educational loan accounts and two (2) other credit accounts that were closed *prior* to Plaintiff's

bankruptcy filing—the VACU 1st Auto Loan, which was being reported with a date closed of December 5, 2017, and a credit account with American First Finance, which was being reported with a date closed of February 15, 2018—Trans Union was reporting a pay status of "Account Included in Bankruptcy" and remarks reflecting "Chapter 7 Bankruptcy". The information that Trans Union was reporting about each of these accounts was incorrect because these loans were all either educational loans excepted from discharge, or loans that were paid and closed prior to Plaintiff's bankruptcy filing. None of the accounts were included in or otherwise impacted by Plaintiff's bankruptcy case.

108.     Trans Union received three dispute letters from Plaintiff, but in the second two instances, it failed to conduct the reinvestigations required by law. Instead, Trans Union merely "parroted" inaccurate information dictated to it by VACU.

109.     Trans Union had knowledge that it was reporting inaccurate information about Plaintiff's Additional VACU Account, but it deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

110.     Upon information and belief, Trans Union published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information disputed by Plaintiff.

**D.     Inaccurate and Derogatory Reporting by Experian.**

111.     The 2019 Disclosures revealed that Experian was also inaccurately reporting derogatory information in a trade line that referred to the Additional VACU Account. Specifically, even though the Additional VACU Account was not one of Plaintiff's Four Discharged VACU Accounts, Experian was reporting in the Additional VACU Account trade line a status of "Discharged through Bankruptcy Chapter 7". Including the Additional VACU

Account, Experian was inaccurately reporting that Plaintiff had five separate VACU accounts discharged in her bankruptcy case.

112.    Experian's reporting with respect to the Additional VACU Account was inaccurate because Plaintiff only had four accounts with VACU at the time of her bankruptcy filing, and she did not open any accounts with VACU thereafter, so it was not possible for a fifth VACU account to have been discharged in Plaintiff's bankruptcy. Even if the Additional VACU Account trade line referred to was a duplicate of one of Plaintiff's Four Discharged VACU Accounts, it was misleading and inaccurate to report differing and derogatory information about that account under two separate trade lines.

113.    On August 29, 2020, Plaintiff sent Experian a letter dated August 28, 2020, via certified mail, to dispute the inaccurate and derogatory information appearing on Plaintiff's credit file (the "First Experian Dispute Letter").

114.    In the First Experian Dispute Letter, Plaintiff disputed the inaccurate and derogatory information Experian was reporting in the Additional VACU Account. Specifically, Plaintiff asserted that, because she only had four accounts with VACU that were discharged in her bankruptcy case, the Additional VACU Account trade line either referenced an account that did not belong to her or was a duplicate trade line of another VACU account already being reported elsewhere on her credit, even suggesting the possibility that the Additional VACU Account was duplicate reporting of the VACU Credit Card. Through that letter, Plaintiff requested that Experian either correct or delete the derogatory information being reported in the Additional VACU Account trade line.

115.    On September 3, 2020, Experian received Plaintiff's First Experian Dispute Letter.

116.    In response to the First Experian Dispute Letter, Experian mailed to Plaintiff its reinvestigation results, dated September 11, 2020.

117.    In its September 11, 2020 reinvestigation results, Experian failed to resolve or make any changes to the inaccurate information that Plaintiff disputed regarding the Additional VACU Account. Instead, Experian merely updated the "first reported" date from May 2018 to September 2020, and Experian continued to inaccurately report the Additional VACU Account with a status of "Discharged through Bankruptcy Chapter 7", which, when combined with the reporting of the Four Discharged VACU Accounts elsewhere on Plaintiff's Credit, continued to make it appear as though Plaintiff had five VACU accounts discharged in her bankruptcy case.

118.    On December 22, 2020, Plaintiff sent Experian a second letter, dated December 21, 2020, via certified mail, to dispute the inaccurate and derogatory information appearing on her credit (the "Second Experian Dispute Letter").

119.    In the Second Experian Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information Experian was reporting in the Additional VACU Account trade line. Plaintiff asserted again that the Additional VACU Account trade line either referenced an account that did not belong to her or was a duplicate trade line of another VACU account already being reported elsewhere on her credit, suggesting again the possibility that the Additional VACU Account was a duplicate reporting of the VACU Credit Card.

120.    Plaintiff enclosed with the Second Experian Dispute Letter copies of the notice of her bankruptcy filing, the Discharge, and her relevant bankruptcy schedules to demonstrate the timing of her bankruptcy filing and Discharge, as well as to identify the creditors and accounts that were discharged in her bankruptcy. Plaintiff requested again that Experian correct or delete the information it was reporting about the disputed Additional VACU Account.

121.     On January 4, 2021, Experian received Plaintiff's Second Experian Dispute Letter.

122.     In response to the Second Experian Dispute Letter, Experian provided to Plaintiff its reinvestigation results, dated January 12, 2021.

123.     In its January 12, 2021 reinvestigation results, Experian failed to resolve or make any changes to the inaccurate information that Plaintiff disputed regarding the Additional VACU Account. Instead, Experian continued to inaccurately report the Additional VACU Account with a status of "Discharged through Bankruptcy Chapter 7", which, when combined with the reporting of the Four Discharged VACU Accounts elsewhere on Plaintiff's Credit, continued to make it appear as though Plaintiff had five VACU accounts discharged in her bankruptcy case.

124.     In or around March 2021, Plaintiff obtained an updated copy of her Experian credit disclosure, dated March 7, 2021, which revealed that, despite Plaintiff's prior disputes, Experian was continuing to report the same inaccurate and derogatory information that Plaintiff previously disputed regarding the Additional VACU Account.

125.     Experian received both of Plaintiff's two dispute letters, but in each case, Experian failed to conduct the reinvestigations required by law. Instead, Experian merely "parroted" the inaccurate information dictated to it by VACU regarding the Additional VACU Account.

126.     Experian had knowledge that it was reporting inaccurate information about the Additional VACU Account, but deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

127.     Upon information and belief, Experian published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the Additional VACU Account disputed by Plaintiff.

**E.     Inaccurate and Derogatory Reporting by VACU**

128.     In or around January 2021, Plaintiff received from VACU a letter, dated January 12, 2021, acknowledging Plaintiff's disputes regarding the reporting of the Additional VACU Account on her credit file.

129.     In its January 12, 2021 letter, VACU explained that the account being reported in the Additional VACU Account trade line is a loan that VACU itself opened when it closed and transferred the VACU Credit Card to collections, which confirms that these two accounts refer to the same debt. Contrary to the information set forth in all of the credit disclosures and reinvestigation results that Equifax, Experian, and Trans Union sent to Plaintiff, VACU also asserted in its January 12, 2021 letter that it was reporting the VACU Credit Card as closed, and reporting the installment loan referred to in the Additional VACU Account trade line as closed and charged off with a balance due.

130.     Upon information and belief, after receipt of the each of Plaintiff's letters disputing information about her VACU accounts, Equifax, Experian, and Trans Union all forwarded Plaintiff's disputes to VACU.

131.     Upon information and belief, VACU utilized the e-OSCAR automated system ("e-OSCAR") and the use of Automated Consumer Dispute Verification ("ACDV") procedures to process Plaintiff's disputes.

132.     Upon information and belief, and based on the information set forth in VACU's January 12, 2021 letter to Plaintiff, VACU was provided notice of all of Plaintiff's disputes to

Equifax, Experian, and Trans Union and, despite receiving these notices, failed and refused to investigate and correct its inaccurate reporting.

133.    VACU was aware of the correct way to report Plaintiff's VACU accounts on Plaintiff's credit following the entry of her Discharge in the bankruptcy case.

134.    Over twenty years ago, the Consumer Data Industry Association (the "CDIA") created a standardized, electronic format named "Metro 2," for furnishers of information (like VACU) to use in reporting to the Nationwide Consumer Reporting Agencies (the "CRA's," which include Equifax, Experian, and Trans Union).[1] Furnishers receive training on how to properly implement the Metro 2 standards, which are laid out in the CDIA's Credit Reporting Resource Guide.

135.    According to the standards in the Credit Reporting Resource Guide, upon entry of Plaintiff's Discharge, VACU should have started reporting *only* those accounts actually included or discharged in bankruptcy as "Discharged through BK Chapter 7", and then discontinued reporting the accounts.[2]

136.    VACU chose to not report information on Plaintiff's credit according to the standards laid out in the Credit Reporting Resource Guide. Instead, VACU chose to report inaccurate information on Plaintiff's credit, indicating that the VACU Credit Card was affected by a chapter 13 bankruptcy petition and an account history showing it was in collection during the months following Plaintiff's bankruptcy, and that the VACU 1st Auto Loan and an Additional VACU Account (neither of which were actually discharged) were included, discharged, or otherwise affected by Plaintiff's bankruptcy.

---

[1] CFPB, KEY DIMENSIONS & PROCESSES IN THE U.S. CREDIT REPORTING SYSTEM (Dec. 2012), *available at* http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.
[2] Consumer Data Industry Association, Credit Reporting Resource Guide 6-17 (2016).

**F.      Recent Publication of Inaccurate Information on Plaintiff's Credit File**

137.      On or about January 15, 2020, around the time she began disputing the inaccurate and derogatory information being reported on her credit, Plaintiff applied for credit with Major Financial Corporation. Upon information and belief, in connection with Plaintiff's credit application, Experian furnished to Major Financial Corporation a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

138.      In January 2020, Plaintiff also sought to obtain a vehicle for her personal use because of mechanical issues she was experiencing with the vehicle she owned at the time.

139.      On or about January 10, 2020, Plaintiff submitted a credit application to Bank of America, seeking approval of an auto loan to finance the purchase of a used vehicle. Plaintiff's application for an auto loan was denied. Upon information and belief, Bank of America relied upon information contained in a consumer report provided by Experian in making its decision to deny the extension of credit to Plaintiff.

140.      On or about January 25, 2020, Plaintiff submitted a credit application to Nissan of Richmond, seeking approval of an auto loan to finance the purchase of a used vehicle. Plaintiff does not recall receiving a response to her credit inquiry from Nissan of Richmond. Upon information and belief, in connection with Plaintiff's credit application, Equifax furnished to Nissan of Richmond a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

141.      Also on or about January 25, 2020, Plaintiff submitted a credit application to Carmax Auto Finance, seeking approval of an auto loan to finance the purchase of a 2014 Hyundai Tucson. In connection with Plaintiff's credit application, Equifax furnished to Carmax

Auto Finance a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

142.    Upon information and belief, because of derogatory information being reported in her Equifax consumer report, Plaintiff's financing options with Carmax Auto Finance were limited. Although Carmax Auto Finance offered to extend credit to Plaintiff, the terms of the loan would have required Plaintiff to repay the amounts borrowed at an extremely high annual percentage rate in excess of 16%. Therefore, Plaintiff did not accept the proposed loan terms.

143.    On or about January 27, 2020, Plaintiff submitted a credit application to Argent Federal Credit Union, seeking approval of an auto loan to finance the purchase of a used vehicle. In connection with Plaintiff's credit application, Equifax furnished to Argent Federal Credit Union a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

144.    In an Adverse Action Notice dated January 28, 2020, Argent Federal Credit Union advised Plaintiff that her credit application was denied, and that the decision to deny her credit application was based in whole or in part on derogatory information appearing in the consumer report concerning Plaintiff that Equifax furnished to Argent Federal Credit Union on January 27, 2020.

145.    Also on January 27, 2020, Plaintiff approached Enterprise Car Sales, located in Richmond, Virginia, regarding the purchase of a vehicle. In connection with her request to finance the purchase of a 2019 Hyundai Tucson, Plaintiff submitted a credit application to the finance department at Enterprise Car Sales, who, in an effort to find the best financing options that might be available to Plaintiff, also approached Nowcom/Westlake Financial, Wells Fargo Dealer Services, Santander Auto and JPMCB Auto Finance ("Chase").

146.    Upon information and belief, on or about January 27, 2020, in connection with Plaintiff's credit application, Experian furnished to Nowcom/Westlake Financial a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

147.    Upon information and belief, on or about January 27, 2020, in connection with Plaintiff's credit application, Equifax furnished to Enterprise Leasing Company, Wells Fargo Dealer Services, Santander Auto, and Chase consumer reports that contained inaccurate and derogatory information concerning Plaintiff.

148.    Upon information and belief, because of the derogatory information being reported in her Equifax and Experian consumer reports, Plaintiff's financing options remained limited. Nevertheless, because of the mechanical problems she was experiencing with the vehicle she owned at the time, Plaintiff was not able to continue to wait to get another vehicle. Therefore, Plaintiff ultimately had to accept the financing terms offered by Chase, which required Plaintiff to repay the amounts borrowed at an extremely high annual percentage rate in excess of 12% over a period of 72 months.

149.    In or around April 2020, Comenity Bank reduced the credit limit from $250.00 to $100.00 on Plaintiff's existing Comenity Bank/Woman Within credit account. Upon information and belief, Comenity Bank relied upon information contained in a consumer report provided by Equifax in making its decision to reduce the credit limit on Plaintiff's Comenity Bank/Woman Within credit account.

150.    In or around July 2020, Plaintiff approached Call Federal Credit Union, located in Richmond, Virginia, seeking to refinance the terms of her Chase auto loan. In connection with her refinance request, Plaintiff submitted a credit application to Call Federal Credit Union. Upon information and belief, on or about July 10, 2020, in connection with Plaintiff's credit

application, Equifax furnished to Call Federal Credit Union a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

151.    Based on information set forth in Call Federal Credit Union's Risk Based Pricing Notice with Credit Score Information, dated July 13, 2020, the annual percentage rate that Call Federal Credit Union was able to offer Plaintiff was adversely affected by the derogatory information being reported in Plaintiff's Equifax consumer report. Plaintiff ultimately accepted the refinancing terms offered by Call Federal Credit Union because the annual percentage rate offered was an improvement over the annual percentage rate she was paying on her Chase auto loan, but the terms of the refinanced loan still required Plaintiff to repay the amounts borrowed at a high annual percentage rate of 8.34% over a period of 72 months.

152.    In or around May 2021, Plaintiff approached Towne Bank, located in Richmond, Virginia, seeking approval of a mortgage loan to finance the purchase of a home. In connection with her request, Plaintiff submitted a credit application to Towne Bank. Upon information and belief, on or about May 5, 2021, in connection with Plaintiff's credit application, Equifax, Experian, and Trans Union each furnished to Towne Bank consumer reports that contained inaccurate and derogatory information concerning Plaintiff.

153.    Through their violations of Plaintiff's rights under the FCRA, Equifax, Experian, Trans Union, and VACU have all caused damage to Plaintiff and continue to damage Plaintiff.

**V.**

**CLAIMS FOR RELIEF**

**COUNT ONE:**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b) (EQUIFAX, EXPERIAN, AND TRANS UNION)**

154.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

155.    Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they each furnished and maintained concerning Plaintiff.

156.    As a result of Equifax, Experian, and Trans Union's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

157.    The violations by Equifax, Experian, and Trans Union were willful, rendering Equifax, Experian, and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

158.    Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT TWO:
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a) (EQUIFAX, EXPERIAN, AND TRANS UNION)

159.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

160.    After Plaintiff disputed the inaccurate information on her respective credit reports, Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

161.    After Plaintiff disputed the inaccurate information, Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

162.    After Plaintiff disputed the inaccurate information, Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

163.    As a result of Equifax, Experian, and Trans Union's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

164.    The violations by Equifax, Experian, and Trans Union were willful, rendering Equifax, Experian, and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative Equifax, Experian, and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

165.     Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT THREE:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1) (VACU)**

166.     Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

167.     On one or more occasions within the past two years, by example only and without limitation, VACU violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

168.     VACU understood the nature of Plaintiff's disputes when it received them from Equifax, Experian, and Trans Union.

169.     On one or more occasions within the past two years, by example only and without limitation, VACU violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax, Experian, and Trans Union.

170.     On one or more occasions within the past two years, by example only and without limitation, VACU violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1)(E), by failing to modify the representations about VACU accounts within Plaintiff's credit files with Equifax, Experian, and Trans Union to remove references to Plaintiff's bankruptcy from VACU accounts that were not included or affected by Plaintiff's bankruptcy.

171.     The law in this District, the Fourth Circuit, and even nationally was long ago articulated to require a detailed and searching reinvestigation by a creditor when it receives a consumer's FCRA dispute through a CRA. See *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004).

172.     VACU was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

173.     VACU has been sued numerous times for its alleged failures to conduct lawful FCRA reinvestigations.

174.     Upon information and belief, the procedures that VACU's employee(s) or agent(s) followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that VACU intended its employees or agents to follow.

175.     Upon information and belief, VACU's employee(s) or agent(s) did not make a mistake in the way in which they followed VACU's procedures when they received, processed and responded to the respective ACDV's from Equifax, Experian, and Trans Union.

176.     As a result of VACU's violations of 15 U.S.C. § 1681s-2(b)(1), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

177.     The violations by VACU were willful, rendering VACU liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, VACU was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

178.     Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from VACU in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT FOUR:
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681b (VACU)

179.     Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

180.    Because of Congress' concern with a consumer's privacy, credit reports can only be disseminated or obtained for certain purposes as established in Section 1681b of the FCRA. Section 1681b establishes the all-inclusive purposes under which a CRA may furnish consumer reports and, in turn, the specific purposes for which a user may obtain a report and "no other." 15 U.S.C. § 168lb(a)(3).

181.    Among those permissible purposes, the FCRA provides that a user may obtain a report for "review" purposes, *i.e.,* "where the creditor has an existing account relationship with the consumer *and* uses the report solely to decide whether to modify the terms of the account."[3]

182.    On two or more occasions within the past two years, by example only and without limitation, VACU violated 15 U.S.C. § 1681b by requesting and obtaining from Equifax a consumer report concerning Plaintiff without Plaintiff's permission or any other permissible purpose.

183.    At the time of both the First and Second Impermissible Credit Pulls, VACU was aware that all of Plaintiff's accounts with VACU that were included in Plaintiff's bankruptcy case had already been discharged, and that Plaintiff had no open credit accounts or any other credit relationship with VACU that would have provided a permissible purpose for VACU to request her credit file.

184.    Because of her bankruptcy discharge, VACU had actual knowledge that it did not have a permissible purpose to obtain credit information concerning Plaintiff for the purpose of an

---

[3] Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations, July 2011, at 13-14 (emphasis in original); *see also* S. Rep. No. 104-185 at 35 (1995) ("[t]he permissible purpose created by this provision, however, is limited to an account review for the purpose of deciding whether to retain or modify current account terms.").

account review. In addition, despite what it asserted to Equifax, VACU did not in fact obtain Plaintiff's credit report information for the purpose of a conducting an account review. Rather, whatever VACU's purpose was in obtaining Plaintiff's credit report information, it was not in form or substance one of the permissible purposes outlined in 15 U.S.C. § 1681b.

185.   As a result of VACU's violations of 15 U.S.C. § 1681b, Plaintiff suffered concrete injuries. In addition to having her privacy invaded and informational injuries, Plaintiff has had her personal identifying and account-related information unnecessarily disseminated to VACU, and, upon information and belief, to its related information-sharing affiliates. VACU has subjected Plaintiff to an increased risk of identity theft and/or a data breach, resulting in consequential anxiety and emotional distress.

186.   The violations by VACU were willful, rendering VACU liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, VACU was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from VACU in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## VI.

### DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)   Award Plaintiff actual and punitive damages for violations of the FCRA by Equifax, Experian, Trans Union, and VACU;

(2)   Award Plaintiff attorney's fees and costs under the FCRA;

(3)   Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4)   Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

                        **SIERRA N. GREEN**

                        By:

                        /s/ Mark C. Leffler
                        Emily Connor Kennedy, VSB# 83889
                        Mark C. Leffler, VSB# 40712
                        Stephen F. Relyea, VSB# 77236
                        Boleman Law Firm, P.C.
                        2104 W. Laburnum Ave, Suite 201
                        Richmond, VA 23227
                        (804) 358-9900 – Telephone
                        (804) 358-8704 – Facsimile
                        Email: eckennedy@bolemanlaw.com
                        Email: mcleffler@bolemanlaw.com
                        Email: sfrelyea@bolemanlaw.com

                        *Counsel for Plaintiff*